## Kentucky & West Virginia Power Company v. Crawford.

(Decided May 3, 1929.)

JOHN M. THEOBALD for appellant.

COUNTS & JARVIS for appellee.

Opinion of the Court by Judge Rees—Reversing.

Appellee, Ed Crawford, and his brothers, Leslie Crawford and Will Crawford, are the joint owners of a tract of land in Carter county, which they inherited from their father. On December 4, 1926, Ed Crawford and his wife executed an instrument of writing by the terms of which they granted to appellant, Kentucky & West Virginia Power Company, the right to construct, operate, and maintain an electric power line and telephone and telegraph lines across the described land, in consideration of $10 for each pole erected thereon. In the writing executed by them the grantors purported to be the sole owners of the land.

Prior to the execution of this writing the appellant had procured from the town of Grayson a franchise to furnish electric current to the city of Grayson for the purpose of lighting its streets, and to the citizens thereof to be used for the purpose of light and heat. It had also procured from the fiscal court of Carter county a franchise authorizing the construction, operation, and maintenance over and along the roads and public ways of

Carter county, for a period of 20 years from and after May 1, 1926, of a line for the transmission, distribution, and sale of electric current to the public.

One of the public highways over which appellant was authorized to construct its transmission line passed through the Crawford land. In constructing its transmission line from Hichens, Ky., to Grayson, Ky., it erected 25 poles on the right of way of that part of this road which was abutted by the Crawford land, and 7 poles were erected on the Crawford land. Appellant offered to pay to appellee the sum of $70 for the 7 poles which he refused to accept, but also demanded payment for 29 poles on the county road. He brought this action to recover the sum of $360, and, at the conclusion of all the evidence, the court instructed the jury to find for the plaintiff at the rate of $10 a pole for 7 poles which had been erected on the Crawford land, and for 25 poles that had been erected on the right of way of the county road, which was abutted by the Crawford land. It appears that 4 of the poles for which the plaintiff was claiming compensation were erected on the right of way of the public road, but in front of church and school property, and these poles were eliminated by the court in the instruction to the jury.

The defendant has prayed an appeal, and seeks a reversal of the judgment on the ground that appellee cannot recover the full contract price, since he owns only an undivided one-third interest in the land over which he attempted to grant an easement to appellant, and that in no event is he entitled to recover for the erection of poles on the right of way of the county road.

At the time the contract between appellant and appellee was made, appellant assumed that Ed. Crawford was the sole owner of the land in question. His brothers were not informed of the contract at that time, and it does not appear that they have ever ratified it. Appellant failed to receive what it contracted for, and the only effect of the contract is to estop appellee from claiming more than his pro rata share of the contract price.

Appellant filed a motion to make Leslie Crawford and Will Crawford parties to the suit, which was overruled. Under the circumstances, they were necessary parties, but the proper method to make them parties was by a pleading. Sections 92 and 118, Civil Code. Since the case must be reversed upon another ground,

the appellant may, if it so desires, upon the return of the case, require Leslie Crawford and Will Crawford to be made parties by filing a proper pleading.

The principal question involved on this appeal is: Does the erection of poles, with wires strung thereon, along a public highway, for the purpose of supplying the public with light, heat, and power, impose an additional servitude upon the highway for which the abutting landowner can recover compensation? There is an irreconcilable conflict in the authorities on this question, but it seems to have been settled so far as this jurisdiction is concerned. In this state it has been held that railroads, whether operated by steam or other motive power, do not impose additional servitudes upon the highway. Lexington & Ohio Railroad Co. v. Applegate, 8 Dana, 289, 33 Am. Dec. 497; Louisville Mfg. Co. v. Central Passenger Railway Co., 95 Ky. 50, 23 S. W. 592, 15 Ky. Law Rep. 417, 44 Am. St. Rep. 203; Georgetown & Lexington Traction Co. v. Mulholland, 76 S. W. 148, 25 Ky. Law Rep. 578; Stein v. Chesapeake & O. R. Co., 132 Ky. 322, 116 S. W. 733. In Cumberland Telephone & Telegraph Co. v. Avritt, 120 Ky. 34, 85 S. W. 204, 27 Ky. Law Rep. 394, 8 Ann. Cas. 955, it was held that a telephone line on a public highway is not an additional servitude on the land.

In Citizens' Telephone Co. v. Cincinnati, N. O. & T. P. Railway Co., 192 Ky. 399, 233 S. W. 901, 18 A. L. R. 615, this court said:

"Our rule with respect to rights of way for a public highway is to hold that the owner of the servient estate has no right or power to interfere with or claim damages for the erection and maintenance of telephone lines along the highway, where the grant is made by public authority. This is on the theory that a grant for a public use and purpose is not violated by the employment of the right of way for telephone lines, which is also a public purpose. We have held that this is not an additional servitude. Street railroads, interurban lines and telegraph lines are embraced in this exception."

A collection of the authorities pro and con on the question as to whether or not a telephone or telegraph line is an added burden on a rural highway, entitling an abutting property owner to compensation, will be found in the annotation to Query v. Postal Telegraph-Cable

Co., A. L. R. 1290. The weight of authority seems to be to the effect that a telephone or telegraph line is an added burden, and the text-writers generally adopt that view. 1 Nichols on Eminent Domain (2d Ed.) section 187; 1 Lewis on Eminent Domain (3d Ed.) sections 187, 188; 1 Joyce on Electric Law (2d Ed.) sections 321, 331; 2 Elliott on Roads and Streets (3d Ed.) sections 894, 895; 3 Dillon on Municipal Corporations (5th Ed.) sections 1213, 1221. However, in the jurisdictions so holding, it is held that the damages to which the abutting property owner is entitled are purely nominal. As hereinbefore stated, in this judisdiction we are committed to the rule that telephone and telegraph lines are not additional burdens upon the fee in the right of way of a public highway, upon the theory that the easement acquired by the public includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities which the advance of civilization may render suitable for a highway. In Ward v. Triple State Natural Gas & Oil Co., 115 Ky. 723, 74 S. W. 709, 25 Ky. Law Rep. 116, and Paine's Guardian v. Calor Oil & Gas Co., 133 Ky. 614, 103 S. W. 309, 31 Ky. Law Rep. 754, 11 L. R. A. (N. S.) 727, 134 Am. St. Rep. 475, it was held that the laying of gas mains in a rural highway constituted an additional servitude.

Without attempting to harmonize these cases, and the cases, supra, involving telephone lines, it is sufficient to say that cases involving electric transmission lines cannot be distinguished from those involving telephone and telegraph lines. Lines for the transmission of light and power must be placed in the same category with telephone and telegraph lines. In 1 Nichols on Eminent Domain (2d Ed.) at page 585, the author says: "An electric light line stands no worse than a telephone or telegraph line. In fact, to the unscientific mind, at least, the transmission of electricity to the various buildings of a city seems more directly analogous to the original functions of a highway than the use of a highway to facilitate conversations upon the telephone. It is safe to say that no court which holds a telegraph or telephone line to be within the highway easement would consider an electric light line to be an additional servitude, and in the few cases in which litigants have had the hardihood to argue to the contrary this assumption appears to be borne out."

In the recently decided case of Kentucky Utilities Co. v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054, it was held, upon the authority of the Avritt case, supra, that the utilities company was not a trespasser, but that it had the right to occupy the public roads of the county with its poles and lines, although the county had only an easement in the roadway, and the landowner owned the land embraced in the roadway, subject to the easement. This court, therefore, is committed to the doctrine that telephone, telegraph, and electric power lines are not additional servitudes upon a public highway, for which the abutting property owner is entitled to compensation.

It follows that the trial court erred in instructing the jury to find for the plaintiff for the poles upon the right of way of the public road. Wherefore the motion for an appeal is sustained, the appeal granted, and the judgment reversed, for further proceedings consistent herewith.